IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**LORA LEIGH MCCOY,**

      **Plaintiff,**

**vs.**                                               **CIVIL ACTION NO. 1:21-CV-00276**

**FRONTIER COMMUNICATIONS,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

On February 3, 2022, the parties came before the Court via TEAMS for a hearing on ***Defendant's Motion for Summary Judgment*** (ECF No. 33). By Administrative Order entered on May 4, 2021, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3) Having examined the Complaint, the additional pleadings of record, and after having considered the pertinent legal authority and the arguments of the parties, the undersigned has concluded that the ***Motion for Summary Judgment*** should be **GRANTED** for the reasons stated *infra*:

### PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleged that she had worked for Defendant since May 22, 2010 through September 2019. Plaintiff alleges that in August and September 2019, she experienced a hostile work environment due to harassment from coworkers based on her appearance and sexual orientation, causing her to quit in September 2019. She described the harassment as having items thrown under and left on her desk, being called names, and having false accusations made against her. Plaintiff

1

sues Defendant because even after Plaintiff informed her supervisor and human resources of the conduct, Defendant failed to put an end to it, despite having a policy that prohibits such harassment.[1]

Plaintiff asks for $495,000 in punitive damages which consists of eleven years of lost employment with Defendant had she been able to work to retirement age, plus her pension.

## PROCEDURAL HISTORY

On May 4, 2021, Plaintiff, acting *pro se*[2], filed her Complaint citing employment discrimination against Defendant. (ECF No. 1)

On June 7, 2021, Defendant filed its Answer. (ECF No. 8)

On June 8, 2021, the undersigned entered a Scheduling Order. (ECF No. 9)

After a period of conducting discovery, at times with requests that the undersigned intercede, on January 10, 2020, Defendant filed its motion for summary judgment, attaching three exhibits: (1) a copy of the transcript of Plaintiff's videotaped deposition, dated November 17, 2021; (2) the Declaration of Lauren Thacker, Human Resources Director at Defendant Frontier Communications; and (3) the Declaration of Elisha Edgell, Assignment Supervisor at Frontier Communications (ECF Nos. 33, 33-1, 33-2, 33-3).

Subsequent to the undersigned's entry of the Roseboro notice (ECF No. 35), on January 21, 2022, Plaintiff filed several responses in opposition to Defendant's motion, supporting memorandum and exhibits (ECF Nos. 39, 40, 41, 42)[3], as well as her own motion requesting a

---

[1] Plaintiff attached an Exhibit to her Complaint, a Notice of Right to Sue issued by the U.S. Equal Employment Opportunity Commission, dated April 13, 2021. (ECF No. 1-1)
[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).
[3] Plaintiff also filed supporting exhibits to a couple of her responses. In her response to the Declaration of Elisha Edgell, Plaintiff attached two exhibits: (1) "Exhibit A" which appears to be segments of her responses to Defendant's

hearing on the matter (ECF No. 38). To accommodate Plaintiff's request for a hearing and to reduce unnecessary health risks due to the increased rate of COVID-19 infection afflicting the local area, the Court scheduled a TEAMS hearing on Defendant's motion for February 3, 2022 (ECF No. 43). On January 28, 2022, Defendant filed its reply (ECF No. 44) to Plaintiff's responses.

## Defendant's Argument in Support of Motion for Summary Judgment

Defendant contends that Plaintiff cannot prove any set of facts to support any claims for discrimination, noting that Plaintiff admitted as much during her deposition. Defendant asserts that any comments of which Plaintiff complains do not substantiate her claims of pervasive harassment; only in 2015 did Plaintiff make a complaint about offensive comments by a coworker, which Defendant immediately investigated, resulting in no further comments. Plaintiff herself admitted that Defendant responded to her complaint quickly and appropriately.

Having been employed by Defendant since May 2010, Plaintiff was well aware of Defendant's Code of Conduct and the variety of mechanisms in place for reporting issues related to employment, including harassment. Defendant states that in August 2019, Plaintiff made a complaint about items being placed on and moved from her desk, which Defendant investigated, however, the investigation did not substantiate her claims that another employee had been moving

---

motion for summary judgment; and (2) "Exhibit G", which appears to be a copy of text messages from Plaintiff's cell phone. (ECF Nos. 41-1, 41-2) In her response to Defendant's memorandum of law in support of its motion for summary judgment, Plaintiff attached four exhibits: (1) "Exhibit A", a copy of her deposition transcript (ECF No. 42-1); (2) "Exhibits B, C, D", which appear to be portions of Plaintiff's responses to Defendant's motion, a copy of Plaintiff's August 1, 2015 email concerning derogatory comments made about her by a coworker, and a copy of a document dated August 26, 2019 entitled "Investigatory Notes from Ethics Complaint Lora McCoy" which appears to show that numerous individuals were interviewed about Plaintiff, and what appears to be notes concerning a meeting including Plaintiff, Erica Lucas and Bryan Stover regarding the complaint made against Plaintiff. (ECF No. 42-2); (3) "Exhibit E", a copy of Plaintiff's Motion to Compel Discovery as well as Plaintiff's discovery requests to Defendant and responses thereto (ECF No. 42-3); and (4) "Exhibits F, G, H, I, J", a copy of the September 9, 2019 letter from Elisha Edgell to Plaintiff summarizing the meeting concerning the anonymous complaint against Plaintiff, copies of text messages from Plaintiff, a tweet from Plaintiff's Twitter account, another copy of the August 26, 2019 "Investigatory Notes from Ethics Complaint Lora McCoy" and notes from the meeting with Plaintiff, Erica Lucas and Bryan Stover, and a copy of the Declaration of Elisha Edgell. (ECF No. 42-4)

things on her desk; Plaintiff admitted during her deposition that she had no evidence or reason that the items being moved on or from her desk were related to harassment based on sexual orientation or appearance.

Defendant states that also in August 2019, it received an anonymous ethics complaint about Plaintiff's behavior. Defendant investigated the matter, and several coworkers corroborated the complaint. While Plaintiff alleged that another employee had referred to her as "it", she admitted that this was not uttered to her face, and that she had no proof that it was about her sexual orientation or appearance.

In September 2019, Defendant received another anonymous ethics complaint about Plaintiff's behavior. Although Defendant ultimately concluded that Plaintiff did not violate its Code of Conduct, it did conclude that her admitted behavior, cursing, was unprofessional and inappropriate for the workplace. On September 9, 2019, Plaintiff met with supervisory staff about her behavior and was provided a letter summarizing Defendant's expectations from Plaintiff's behavior at the workplace going forward. On September 13, 2019, Plaintiff gave her two weeks' notice, and after being advised to think about her decision over the weekend, on September 16, 2019, Plaintiff again gave notice of her resignation, but then changed her mind that afternoon, indicating that the anonymous complaints made against her weighed heavily on her. She was provided information for Defendant's Employee Assistance Program but by September 18, 2019, however, Plaintiff again stated she no longer wanted to work for Defendant; her resignation became effective the next day. Defendant states that Plaintiff did not provide any specific reason for her resignation.

Following her resignation, on September 25, 2019, Plaintiff's former supervisor, Elisha

Edgell, and Union Steward, Erica Lucas, met with Plaintiff to return her personal effects: Plaintiff threw a Veteran's Day hat and letter at Ms. Edgell and later that day, and on numerous occasions afterwards, Plaintiff texted Ms. Edgell, indicating she had been discriminated against, but in a letter she gave her on October 18, 2019, Plaintiff apologized for her behavior and thanked Ms. Edgell for her support as her supervisor but did not mention discrimination, harassment or retaliation.

In light of the foregoing, Defendant is entitled to summary judgment.

**Plaintiff's Response in Opposition**

Plaintiff asks the Court to deny Defendant's motion (ECF No. 39).

In response to the Declaration of Lauren Thacker, Plaintiff explains that during the August 28, 2019 meeting with Ms. Lucas, Mr. Stover, Mr. Hall, and Mr. Wheeler, she denied the allegations against her made in the anonymous complaint, and confirmed that she was upset that a candy bar was left on her desk and her Navy cap was under her chair. (ECF No. 40) Plaintiff states that a coworker, Kellis Noble, would walk by and say things like "IT is here" or "Goodnight it", and that "it" is a slur against gay or trans people. (Id.) During a conference call concerning the second anonymous complaint against her, Plaintiff denies having cursed, although admitted that at times she had and that it was inappropriate. (Id.) Plaintiff states she did not speak with Ms. Thacker, as she works in Charleston. (Id.)

In response to the Declaration of Elisha Edgell, Plaintiff states that she and Ms. Edgell were both hired in 2010 and that Ms. Edgell was her supervisor from May 2019 to September 2019. (ECF No. 41) Plaintiff states that on August 23, 2019, she informed Ms. Edgell that she found her Navy cap and lanyard under her desk, and did not want to "make A big deal out [of] it",

but indicated that Mr. Noble may have done it due to a schedule change. (Id.) Although Plaintiff was initially offended that someone had left a Mr. Goodbar candy bar on her desk, she later learned that a coworker, Chris Shelton, put it there because he thought Plaintiff was having a bad day. (Id.) On September 4, 2019, Plaintiff reported to Pat Barley and Ms. Edgell that Sherry Hager, a union steward, informed Plaintiff that she did not like gay people and advised gay people should not be permitted to work at Frontier. On September 6, 2019, Plaintiff states that on the same day an anonymous complaint was made against her for cursing, Ms. Hager was loudly complaining about laws not protecting "you people" and that "Frontier shouldn't hire you people this is West Virginia" in front of Ms. Edgell and Ms. Barley. (Id.)

Plaintiff corroborates Defendant's findings following its investigation into the anonymous complaints. (Id.) Plaintiff also admits that she informed Ms. Edgell that she wanted to resign for "personal reasons"; Plaintiff states that the "environment itself and everything going on was making it hard for [her] to be there" and that on September 18, 2019, when she was sitting at her desk, Mr. Noble "walked by again and said 'oh it's still here' . . . I thought about it for 10 minutes and decided to leave." (Id.) Though she did tell Ms. Edgell why she was leaving, Plaintiff states "she already knew about Sherry Hager at that time and I did not trust Management anymore. I just could not be there anymore." (Id.)

Plaintiff disputes Defendant's account of her post-resignation interactions with Frontier representatives, but indicates American flags and a POW flag were not returned with her personal effects. (Id.; ECF Nos. 41-1, 41-2)

In response to Defendant's memorandum of law supporting its motion for summary judgment, Plaintiff disputes Defendant's version of events, stating that she quit "because of all

6

events that took place in three weeks", including her personal belongings put under her desk, being called "it", and hearing an employee loudly saying that gay people should not be hired. (ECF No. 42) Plaintiff admits she complained of a prior incident in 2015 that was taken care of, but that was under different management at the time; management in 2019 did not address Plaintiff's complaints the same, as none of the employees Plaintiff complained of were interviewed. (Id.) Plaintiff asserts that she told both Ms. Barley and Ms. Edgell that Ms. Hager said Frontier should not hire gay people and that Plaintiff did not want Ms. Hager as her union representative because of that. (Id.) Plaintiff also states that both Ms. Barley and Ms. Edgell were aware of what Ms. Hager had said because they were nearby, although Ms. Hager did not see them. (Id.)

Plaintiff does not dispute her employment history at Frontier or the relevant employment policies. (Id.) However, Plaintiff disputes the factual allegations concerning the items moved from and under her desk – she was upset that her Navy cap and lanyard were on the floor because Plaintiff is a veteran. (Id.) Plaintiff insists that during the August 28, 2019 meeting she did mention Mr. Noble had been making "it" comments prior to this, and she suspected it was due to the schedule change. (Id.) Plaintiff corroborates the issues surrounding the candy bar being left on her desk. (Id.) Plaintiff disputes that the items being moved on and from her desk only occurred in 2019, but indicates that had been ongoing since 2015. (Id.) Plaintiff argues that the candy bar, Navy cap and lanyard and items being moved from her desk are not the sole incidents related to her claim. (Id.) Plaintiff disputes Defendant's argument that she has no evidence of her claim – she only states that she has no "physical evidence" of being called "it". (Id.) Plaintiff indicates that she disputes Defendant's argument that she resigned due to the anonymous complaints – she resigned due to the articles left on her desk, the comments being made about her and fear of being

7

fired should another allegation be made about her, whether it was true or false; she figured it was better to resign than be terminated. (Id.) Plaintiff disputes that she sent Ms. Edgell a text, and that those were tweets from Plaintiff's Twitter account, but Plaintiff did not send the text; Plaintiff also asserts that she had not seen that before her deposition. (Id.)

Plaintiff argues that the work environment at Frontier was pervasive and that had occurred over several years; Plaintiff states that despite informing her supervisors and management about the harassment, specifically, Ms. Hager's comments, they did nothing about it. (Id.) Plaintiff had to quit due to the ongoing harassment that she had already complained of, but when management did nothing about it, and given the recent anonymous complaints against her, Plaintiff felt it best to leave that environment. (Id.)

## Defendant's Reply

Defendant asserts that Plaintiff's responses fail to dispute the material facts as well as the legal principles supporting Defendant's Motion. Additionally, Defendant argues that at most, Plaintiff's complaints about a coworker's comments are isolated offensive utterances, but do not rise to a hostile work environment. (ECF No. 44) Plaintiff relies on self-serving testimony that contradicts the exhibits she also relies upon in her responses – she did not inform Defendant that she suspected Mr. Noble was making references to her sexual orientation, gender, or appearance; this does not create a genuine issue of material fact. (Id.) Plaintiff has cited no evidence supporting her assertion that Defendant did not speak to Mr. Noble about her complaints. (Id.) Defendant argues that the incidents Plaintiff complains of, at most, describe unprofessional behavior, but fall short of the "severe or pervasive" threshold required to support a hostile work environment claim. (Id.) None of the incidents Plaintiff complains of are attributable to a Frontier manager or

8

supervisor; Plaintiff did not advise Defendant that she felt she was being harassed because of membership in a protected class, therefore, Defendant was not provided an opportunity to investigate such a claim. (Id.) Plaintiff did not advise Ms. Edgell that she was quitting due to harassment, but only for personal reasons. (Id.) Plaintiff had no proof that the incidents surrounding her Navy cap and lanyard, or the candy bar had anything to do with her sexual orientation or gender. (Id.) Because Plaintiff fails to present evidence upon which a jury could determine that a reasonable person would find that employment condition intolerable, and has failed to present a genuine issue of material fact, Defendant is entitled to summary judgment. (Id.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).

The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Accordingly, the undersigned finds that the Exhibits attached to the parties' pleadings may be properly considered for purposes of a motion for summary judgment.

## **DISCUSSION**

As an initial matter, there are certain material facts that are not in dispute:

1. Plaintiff had been employed by Defendant from May 2010 until her resignation in September 2019;

2. Prior to Plaintiff's resignation, in August 2015, she reported that a coworker had made rude comments about her appearance; Defendant initiated an investigation into the matter following receipt of Plaintiff's complaint, the matter was resolved to Plaintiff's satisfaction, and the coworker did not make further comments to Plaintiff;

3. Plaintiff made no reports of harassment or discrimination between August 2015 and August

10

2019;

4. Plaintiff has no evidence that articles being moved on or under her desk was due to harassment based on her sexual orientation;

5. On or about August 22, 2019, Plaintiff reported to her supervisor, Elisha Edgell, that her Navy cap and lanyard had been put under her desk; while Plaintiff did not see anyone put these items under her desk but thought a coworker, Kellis Noble, may have done it because he was upset over a new schedule and that Plaintiff got the more favorable shift; Plaintiff does not have any evidence that anyone put her Navy cap and lanyard under her desk as harassment due to her sexual orientation;

6. On or about August 23, 2019, a Mr. Goodbar candy bar was placed on her desk; while Plaintiff was initially offended thinking it was placed on her desk due to her appearance (see 2015 incident), she later learned that Chris Shelton, who she was on good terms with, put it there, as he thought she was having a bad day; Plaintiff does not have any evidence that the candy bar was put on her desk as harassment due to her sexual orientation;

7. All of Plaintiff's complaints involve coworkers, not managers or supervisors;

8. All of Plaintiff's complaints concern events occurring during a three-week time frame in August and September 2019;

9. On September 13, 2019, Plaintiff reported to Ms. Edgell that she wanted to resign because of the ethics complaints made against Plaintiff; Plaintiff did not tell Ms. Edgell that she wanted to resign due to issues of harassment or discrimination;

10. Ms. Edgell advised Plaintiff to think about her decision to resign over the weekend;

11. On September 16, 2019, Plaintiff texted Ms. Edgell that she intended to put in her two

weeks' notice for "personal reasons";

12. On September 19, 2019, Plaintiff finally resigned by turning in her badge to Ms. Edgell;

13. Upon her final resignation on September 19, 2019, Plaintiff did not report she experienced any discrimination or harassment that day;

14. On or about October 18, 2019, Plaintiff gave an apology letter to Ms. Edgell that did not mention or contain any complaints concerning harassment or discrimination.

### Proving Discrimination Claims Under Title VII

To prove a discrimination claim under Title VII, a plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's protected status; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 328 (4th Cir. 2018) (internal citation omitted); see also Pennsylvania State Police v. Suders, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Additionally, to prove a constructive discharge claim, a plaintiff must also show "that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign" and that she actually resigned. See Green v. Brennan, 578 U.S. 547, 136 S.Ct. 1769, 1777, 195 L.Ed.2d 44 (2016) (citing Suders, 542 U.S. at 148).

Even construing Plaintiff's allegations under the most liberal construction fails to demonstrate that her coworkers' alleged misconduct was "sufficiently continuous" or "pervasive" to rise to actionable levels. See Shields v. Federal Express Corp., 120 Fed. App'x. 956, 961 (4th Cir. 2005); Bannerman v. Potter, 2002 WL 32509029, at *8 (S.D.W. Va. Sept. 30, 2002) (Copenhaver, J.) (defendant entitled to summary judgment on plaintiff's claim of hostile work

environment where objectionable behavior was not actionable because there was no evidence that the incident was part of a longstanding pattern of hostile and intimidating conduct); Fairmont Specialty Serv. v. West Va. Human Rights Comm'n, 206 W. Va. 86, 96, 522 S.E.2d 180, 190 (1999) (holding that "[m]ore than a few isolated incidents" are required).

As noted *supra*, Plaintiff has filed this action based on her coworkers alleged discriminatory conduct towards her on the basis of her sexual orientation. Plaintiff has alleged that an offensive comment was made about her appearance in August 2015 that was investigated by Defendant once notified of the comment and the matter was resolved to Plaintiff's satisfaction. Not until August 2019 did Plaintiff report complaints about issues related to her employment: items were being moved on or under her desk; a candy bar was placed on her desk – significantly, Plaintiff concedes she has no proof that these particular instances were the result of harassment or discrimination based on her sexual orientation. Plaintiff further admits that the alleged harassment or discriminatory incidents, including the two aforementioned incidents occurred during a three-week period, to-wit: being left out of the loop and not told things; a co-worker referring to Plaintiff as a "freak" when talking to another co-worker; another co-worker, Mr. Noble, made comments to other employees such as "It's here" and "It's here today" while looking at Plaintiff; and another co-worker, Ms. Hager, making comments that gay people should not be working for Defendant, that state laws do not protect "you people", and "I don't know how you are a veteran".

While there is some dispute as to whether Plaintiff reported all of these instances of alleged discrimination, simply put, these facts fail to demonstrate the necessary "severe or pervasive" threshold necessary to support a hostile work environment claim. "[I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or

pervasive standard." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306,315 (4th Cir. 2008). "[R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." Id., 521 F.3d at 315-316 (internal quotation marks and citations omitted); see also, Greene v. A. Duie Pyle, Inc., 170 F. App'x 853 (4th Cir. 2006)(pornography magazines in the workplace cafeteria, the men's room, and sexually offensive faxes, cartoons and emails posted near a time clock were not severe or pervasive enough to establish a hostile work environment); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996), *cert. denied* (supervisor's sexual innuendos, jokes and physical contact was not sufficiently severe or pervasive to create a hostile work environment).

Indeed, as admitted by Plaintiff herself, not all of these alleged events are related to her claims of harassment or discrimination based on her sexual orientation, but even assuming that they were, clearly, Mr. Noble's and Ms. Hager's alleged offensive comments were isolated events, as there is no evidence that they constituted a pattern of behavior that underpins Plaintiff's hostile work environment claim. As an additional matter, while Plaintiff has conceded that she has no physical or other proof that any of these events were discriminatory based on her sexual orientation, she also admitted that her interpretation of the intent behind these events are based upon her subjective beliefs. (See ECF No. 33-1 at 28)

To the extent that Plaintiff alleges a hostile work environment is imputable to Defendant, there is insufficient evidence to support this claim. An employer may be found vicariously liable to an employee when a supervisor "with immediate (or successively higher) authority" over her creates an "actionable hostile environment." Faragher v. City of Boca Raton, 524 U.S. 775, 807-808 (1998); Burlington Indus.,Inc. v. Ellerth, 524 U.S. 742, 765 (1998). As noted *supra*, and

admitted by Plaintiff, none of these alleged instances of misconduct were done by a supervisor or manager. However, to hold Defendant liable, Plaintiff would have to prove that it knew or should have known about the harassment but failed to take action reasonably calculated to stop it. Ellerth, 524 U.S. at 759; Strothers v. City of Laurel, 895 F.3d 317, 332-334 (4th Cir. 2018); see also Pryor v. United Airlines, Inc., 791 F.3d 488, 498 (4th Cir. 2015). Until an employee has made "a concerted effort to inform the employer" about harassing conduct unknown to the employer, that "employer cannot be expected to correct [the] harassment." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 268 (4th Cir. 2001) (internal citation omitted). Again, as noted above, the only time Plaintiff made such a "concerted effort" was back in August 2015, an occurrence that, according to Plaintiff herself, Defendant investigated and resolved to her satisfaction. Despite making a "concerted effort" to report articles being moved on and under her desk, even Plaintiff conceded these occurrences were unrelated to issues of harassment or discrimination.

During the hearing, Plaintiff repeatedly referred to her deposition transcript as proof of instances when she reported being harassed or discriminated against. However, the deposition transcript makes clear that regarding her co-worker's comments, Plaintiff made no concerted effort to inform Defendant that she felt she was being harassed on the basis of her sexual orientation. The only mention of Mr. Noble's "it" comments was during the interview on August 28, 2019 when Mr. Stover, Ms. Thacker, and Mr. Wheeler were investigating complaints against Plaintiff herself, and at that time, Plaintiff advised them that Mr. Noble had called her "it", however, she did not report that she felt discriminated against for her sexual orientation. (See ECF No. 33-1 at 26-27) Similarly, Plaintiff admits she did not report her conversation with Ms. Hager on or about September 3, 2019 in which Ms. Hager advised

Plaintiff that her religious beliefs did not support gay people. (Id. at 29-30) While Plaintiff alleged she told Ms. Edgell and Ms. Barley that Ms. Hager told her that "she did not think my people should be at Frontier" on or about September 4, 2019, Plaintiff did not explain to them how she felt discriminated against by that comment. (Id. at 29) Plaintiff also did not report that Ms. Hager "loudly" stated on September 6, 2019 that "there are no state laws protecting you people. Don't bring your people around here. I don't know how you are a veteran. Frontier shouldn't hire you people. This is West Virginia", Plaintiff only "assume[s]" that Ms. Edgell and Ms. Barley heard Ms. Hager. (Id. at 31-32) On her last day, when she finally gave notice of her resignation, she did not report that Mr. Noble had referred to her as "it" (Id. at 35).

Regarding her claim of constructive discharge, Plaintiff also fails to demonstrate sufficient evidence that Defendant's actions were deliberate and that working conditions were objectively intolerable. Heiko v. Columbo Savings Bank, FSB, 434 F.3 249, 262 (4th Cir. 2006). Again, in reference to the deposition transcript, Plaintiff herself admits that she resigned because she feared she would be terminated if another complaint was made about her behavior, and that the allegations made in the complaints "weighed heavily" on her. (See ECF No. 33-1 at 33, 34) Plaintiff admits that she advised Ms. Edgell that she was resigning for "personal reasons", and did not mention she felt harassed or discriminated against for her sexual orientation. (Id. at 35)

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant is entitled to summary dismissal of this matter.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** ***Defendant's Motion for Summary Judgment*** (ECF No. 33), **DISMISS** Plaintiff's Complaint (ECF No. 1) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on any opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to the *pro se* Plaintiff and to counsel of record.

ENTERED: February 7, 2022.



Omar J. Aboulhosn
United States Magistrate Judge